ELLIOTT N. KANTER, ESQ.
LAW OFFICES OF ELLIOTT KANTER
2445 5TH AVENUE, SUITE 350
SAN DIEGO, CA  92101
TELEPHONE  619-231-1883
FACSIMILE  619-234-4553

Attorney for Plaintiffs, HECTOR MARTINEZ, GEORGE SILVA, MICHAEL GARROD, and
MYRNA SILVA

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR MARTINEZ, GEORGE SILVA, MICHAEL GARROD, and MYRNA SILVA, | Case No.: 13cv00167-CAB (NLS) |
| Plaintiffs, | **FIRST AMENDED COMPLAINT FOR DAMAGES FOR:** |
| vs. | **1.  EMPLOYMENT DISCRIMINATION – RETALIATION**<br>**2.  EMPLOYMENT DISCRIMINATION – FAILURE TO PREVENT DISCRIMINATION AND RETALIATION**<br>3.  **EMPLOYMENT DISCRIMINATION – RACIAL DISCRIMINATION**<br>4.  **EMPLOYMENT DISCRIMINATION – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964** |
| SWEETWATER AUTHORITY; AND DOES 1 THROUGH 50 INCLUSIVE, | |
| Defendant(s). | |

Plaintiffs, HECTOR MARTINEZ, GEORGE SILVA, MICHAEL GARROD, and MYRNA SILVA, in their cause of action against Defendant, SWEETWATER AUTHORITY, hereby allege:

1.      Plaintiffs, Hector Martinez, George Silva, Michael Garrod and Myrna Silva are, and at all times mentioned herein, were residents of San Diego County, California.

2.     At all times herein defendant, Sweetwater Authority was a Joint Powers public water agency operating pursuant to *California Government Code* 6500 et. seq. and duly authorized to do and did transact business as a publicly owned governmental agency n San Diego County, State of California.—Defendant was an "employer" as defined by *California Government Code* §12926(d) that regularly employed 5 or more persons and/or was a governmental municipality. The true names and capacities, whether individual, corporate, associate or otherwise of defendants sued herein as Does 1 through 50 are currently unknown to plaintiffs who sue these defendants by these fictitious names. Plaintiff is informed and believes and thereupon alleges each defendant designated as a Doe was legally responsible in some manner for the events and happenings referred to herein and caused the injury and damage to plaintiffs as alleged herein. Plaintiffs will seek leave of court to amend this complaint to show the true names and capacities of defendants designated as a Doe when they have been ascertained.

3.     On February 15, 2008 plaintiff Hector Martinez filed a claim against defendant for racial discrimination. Plaintiffs Michael Garrod, George Silva and Myrna Silva participated in the investigation of racial discrimination against Hector Martinez.

4.     As a direct result of plaintiffs' participation in the discrimination claim, they were and continue to be harassed and discriminated against. The retaliation includes, and is not limited to acts done by former Sweetwater Authority General Manager Mark Rogers.

5.     Plaintiff Hector Martinez filed a claim for Racial Discrimination dated February 15, 2008 against Sweetwater Authority. Plaintiff Hector Martinez subsequently retained an attorney who in turn submitted a letter advising their representation. Subsequently, all plaintiffs sustained retaliation by defendant for their participation into the investigation of Hector Martinez's claim against Sweetwater Authority for Racial Discrimination. This included, but was not limited to being purposefully excluded from important company meetings, as well as being passed over for promotions for positions that were given to obviously less qualified individuals. Further, since plaintiffs' claims, they have sustained significantly lower evaluations on performance reviews.

6.      After Mr. Martinez made his claim for racial discrimination, a group of concerned South Bay citizens, including the plaintiffs, formed a group called the "Chula Vista Democratic Club," the purpose of which was to create a platform for which individuals in the community, including but not limited to Sweetwater Authority employees, could take political action to prevent racial discrimination against individuals within the South Bay community including Sweetwater Authority, such as Mr. Martinez, by helping and conceiving of ways in which minorities may be elected to the electable positions within the South Bay community including Sweetwater Authority.

**FIRST CAUSE OF ACTION**
**EMPLOYMENT DISCRIMINATION – RETALIATION**

7.      Plaintiffs reallege each and every paragraph of the complaint as if fully set forth herein.

8.      The United States Equal Opportunity Commission makes it illegal to fire, demote, harass, or otherwise "retaliate" against people (applicants or employees) because they filed a charge of discrimination, because they complained to their employer or other covered entity about discrimination on the job, or because they participated in an employment discrimination proceeding (such as an investigation or lawsuit). "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. 2000e-3(a)

9.      Additionally, the law forbids retaliation when it comes to any aspect of employment, including hiring, firing, pay, job assignments, promotions, layoff, training, fringe benefits, and any other term or condition of employment.

10.     During the course of their employment with defendant, plaintiff Hector Martinez, was subjected to retaliatory employment practices after filing a racial discrimination complaint against Sweetwater Authority.

11.     The formal racial discrimination complaint was filed on February 15 2008, when Mr. Martinez was denied a promotion from his position as Engineering Manager to Director of Engineering. The promotion was ultimately given to an individual named Jack Adam, who was grossly under-qualified for the position (as evidenced by his subsequent resignation in 2011) and who, when compared to Mr. Martinez, possessed no qualitative or quantifiable attributes that would objectively suggest he was better suited, sufficiently competent, or deserving of the position. However, unlike Mr. Martinez, Mr. Adam is white. It is important to note that at the time of Mr. Martinez's bid for promotion in 2008, there had never been a minority Director of Engineering in the history of Sweetwater Authority. That is still the case to this date.  From the time of Mr. Adams resignation, Mr. Martinez and Mr. Garrod managed the day to day operation of the Department with positive results until the current director was hired.

12.     Following the formal racial discrimination complaint filed by Mr. Martinez, Plaintiffs George Silva, Myrna Silva, Michael Garrod and Mr. Martinez took part in the internal investigation into the Complaint against Sweetwater Authority.

13.     In the investigation, Plaintiffs discussed mainly two topics. The first topic was whether they believed that Mr. Martinez's racial discrimination claim was meritorious. All of the Plaintiffs asserted that although they had no proof that Mr. Martinez's non-promotion was directly based on racial discrimination, there were circumstances and other indicia which made them believe that the occurrence of racial discrimination against Mr. Martinez was highly probable. Plaintiff Michael Garrod specifically indicated a culture of racism at Sweetwater Authority. Plaintiff Hector Martinez cited an incident in which Jim Smyth, the then Deputy Operations Manager/Director of Engineering, and also the person who chaired the panel that determined who would receive promotions such as the one Mr. Martinez was denied, stated that he would never allow his daughter to marry a black man.

14.     The second topic the Plaintiffs discussed was whether they believed that Mark Rogers was a suitable General Manager for Sweetwater Authority. The Plaintiffs all indicated that he was not suitable, indicating specific instances in which he demonstrated his unfitness for the position, including multiple instances of him committing gross sexual harassment against Sweetwater employees, as well as frequently intimidating employees.

15.     Despite a promise from the investigators looking into Mr. Martinez's racial discrimination claim that Plaintiffs comments would not be shared with Mark Rogers, Plaintiffs are informed and believe that their statements were made available to Mark Rogers, who then personally and by proxy (through employees over whom he had authority, control and persuasive power) began a campaign of retaliatory acts against Plaintiffs.

16.     As alleged herein, defendant retaliated against plaintiffs by adversely affecting the terms and conditions of their employment in violation of FEHA Cal. Gov. Code §12940(h).

17.     Plaintiffs' retaliation claims are supported by defendant's conduct as described herein, including but not limited to plaintiffs Michael Garrod, Hector Martinez and George Silva being passed up for promotions they were qualified for, which were filled by less qualified individuals, and Plaintiffs being uninvited or precluded from panels and meetings that they had previously participated in and held leadership positions in. Additionally, following Plaintiffs participation in Mr. Martinez's racial discrimination investigation, Plaintiffs began receiving unprecedentedly low performance reviews, despite there being no identifiable deficiency in the quality of their work. Furthermore, Plaintiffs have seen the number of individuals under their supervision decrease immediately following their participation in the investigation; just one of the many ways in which Sweetwater Authority's retaliatory acts divested Plaintiffs of their career accomplishments and hard-earned responsibility and command within Sweetwater Authority.

18.     Plaintiffs have been informed by other Sweetwater employees that Jim Smyth and Mark Rogers have informed many of Plaintiff's co-workers that Plaintiffs are out against Sweetwater Authority and those co-workers should "stay away" from Plaintiffs.

19.     Each Plaintiff has suffered retaliation in different ways, but the common thread is that the retaliation began immediately following their participation in the Mr. Martinez's racial discrimination investigation.

20.     As to Plaintiff George Silva, he believes that his name has been tainted as a result of his vilification by Sweetwater Authority former General Manager Mark Rogers and his replacement Jim Smyth. In May of 2008, Mark Rogers told Bill Olson, a Director of Operations at Sweetwater, not to associate with Plaintiff George Silva. In August of 2010, Mark Rogers discovered the location of where Plaintiffs, including Mr. Silva, were holding a meeting for the Chula Vista Democratic Club (described in paragraph 6 of this Amended Complaint). In a bizarre display of aggression and intimidation, Mark Rogers leered and stared at the Plaintiffs and their group from outside the room where the meeting was being conducted. Approximately a week later on September 3, 2010, Mr. Silva filed a Complaint for Retaliation based on the article published in The Source, which was acknowledged by Sweetwater Authority Counsel Best, Best and Krieger (henceforth "BBK"). In response, BBK retained an allegedly impartial investigator named Lynn Lasry. Ms. Lasry investigated Mr. Silva's and the other Plaintiffs' claims of Retaliation. Despite numerous requests, the report on that investigation or its findings has never been provided to any of the Plaintiffs contrary to the SWA Middle Management Memorandum of Understanding. Plaintiffs are informed and believe that the contents of that report absolutely and unequivocally indicate that Plaintiffs have been the victims of widespread, vindictive, and systematic retaliation, the effects of which are still felt by Plaintiffs today in their unjustifiably stunted career development and hostile work environment. Additionally, when an Assistant General Manager position opened in 2011, Mr. Silva qualified, since he held the position of Information Systems Director, and was given a test to determine his aptitude in Microsoft Excel and Word. Despite having submitted hundreds of well-done Excel and Word documents to superiors over the course of his extensive career at Sweetwater Authority, he was told his skills in Microsoft Excel was deficient and he was precluded from further pursuit of the position. Not surprisingly, Jim Smyth, a key figure in the investigation of Mr. Martinez's racial discrimination investigation, was the individual assessing the performance. The retaliation by Sweetwater

Authority and its agents against George Silva continues to this day, as each day he returns to a hostile work environment.

21.     As to Plaintiff Myrna Silva, she has suffered serious retaliation in the form of Sweetwater's interference and delay of a Worker's Compensation claim she made following her participation in Mr. Martinez's racial discrimination claim. Mrs. Silva's claim, which involved a carpal tunnel injury and was first reported in January 2009, was deemed by Sweetwater Authority's doctor to be work-related on April 20, 2009. However, Sweetwater Authority still denied the claim. Mrs. Silva was placed on modified duty on February 12, 2009, but instead was given a heavier work load than usual, and was unable to take the required rest breaks as recommended by the doctor, producing significant stress and anxiety for Mrs. Silva. Because of this, and because of continued retaliation by not approving her claim, even though Sweetwater's doctor had verified the injury as work-related, Mrs. Silva was placed on medical leave by her personal physician for work related stress, from May 11, 2009 to September 4, 2009. During this time, she saw a psychologist for her stress. Mrs. Silva returned to work on September 7, 2009, and was placed on a modified work schedule, working four hours a day. Mrs. Silva's workers compensation doctor opined that she could return to her normal work hours limiting her typing to four hours per day. Even though Mrs. Silva typed no more than two hours in a day, Sweetwater Authority sent Mrs. Silva home claiming that she typed eight hours a day, therefore making her unable to return to her normal duties, and refused to make accommodations for her injury. In a deposition of her supervisor Mike Gravitt on October 14, 2009, Mr. Gravitt stated that Mrs. Silva typed at the most four hours a day. Mrs. Silva's claim was finally approved on February 3, 2010, nearly one year after the initial claim. During this time, Mrs. Silva did not receive workers compensation pay and received no treatment for her injury. Mrs. Silva had to rely on PTO, short term disability, and long term disability, at some point receiving no income at all. Mrs. Silva's Worker's Compensation attorney, David Keppler, stated "the level of incompetence with which this claim is being handled has now reached mind blowing proportions. I've never really seen anything quite like it", and asking Mrs. Silva what she had done to deserve this treatment from Sweetwater Authority. Mrs. Silva believes this anomalous treatment of her Worker's

Compensation claim by Sweetwater Authority was retaliatory due to the common understanding of Sweetwater Authority employees that Sweetwater has a very strong say on Worker's Compensation issues. Plaintiff Myrna Silva is aware of no Worker's Compensation claim by any other employee that took that amount of time to resolve. On April 18, 2013, Mrs. Silva attended a deposition regarding a current workers compensation claim, which was deemed by her attorney to be a complete waste of Sweetwater Authority's time and money. Her attorney again, confused as to why Sweetwater Authority had scheduled this deposition, stated to Mrs. Silva that Sweetwater Authority has a personal vendetta against her. The retaliation by Sweetwater Authority and its agents against Myrna Silva continues to this day, as each day she returns to a hostile work environment.

22.     As to Plaintiff Michael Garrod, he has suffered immense retaliation. After participating in the investigation into Mr. Martinez's racial discrimination claim and the first day after the investigation was complete in May of 2008, Mr. Garrod was immediately retaliated against by Mark Rogers when he stood in Mr. Garrod's office and berated him after work hours. Mr. Garrod, prior to the investigation, held a chair position on the Technical Advisory Committee (TAC) for the Carlsbad Desalination Partners. Mr. Garrod was in his office, literally about to walk out of the door to participate in the Desalination Partners as he had multiple times in the past, when Jack Adam (the individual who received the promotion upon which Mr. Martinez based his racial discrimination claim) stopped him and told him that Mark Rogers did not want him to attend the meeting. Mr. Garrod was told by Jack Adam  that "We all make decisions and you made the wrong decision," presumably referring to Mr. Garrod's decision to participate in the investigation of Mr. Martinez's racial discrimination claim. Mr. Garrod did not end up going to that meeting. Later that same day, Jack Adam came by his office again and apologized, saying that he should not have said that. Nonetheless, the initial statement blatantly implicates Mark Rogers and Sweetwater's orchestration of systematic retaliation against Mr. Garrod.   Since 2008, Mr. Garrod, whose performance evaluations immediately plummeted following his participation in the investigation Mr. Martinez's racial discrimination claim, has

lived in constant fear of losing his job and suffers from the effects of an unhealthy and hostile work environment.

23.     The retaliation by Sweetwater Authority and its agents against Michael Garrod continues to this day, as each day he returns to a hostile work environment. Prior to his participation in the investigation of the racial discrimination claim made by Hector Martinez, Mr. Garrod was in charge of about eight employees. Following his participation in the investigation, Mr. Garrod is only in charge of one employee. To this day, Mr. Garrod is only in charge of one employee. Further, Mr. Garrod, prior to his participation in the investigation of Mr. Martinez's 2008 claim, maintained professional membership in the American Public Work Society and the American Society of Civil Engineers, the dues for which Defendant Sweetwater Authority paid. After his participation in the investigation of Mr. Martinez's claim, Sweetwater Authority terminated its payment of the dues to those professional societies. To this day, Sweetwater Authority continues to retaliate against Mr. Garrod for his participation in the racial discrimination investigation by not paying for his professional membership to the above-mentioned societies, while at the same time, continuing to pay for other employees to be members of those societies.

24.     As to Plaintiff Hector Martinez, retaliation against him for his racial discrimination claim against Sweetwater has been extensive, pervasive, systematic, and clearly orchestrated by Sweetwater Authority. The retaliation Mr. Martinez has suffered includes being passed over for promotions, despite his objectively stellar academic achievements, work-related performance assessments (prior to his racial discrimination claim) and experience both in the public sector and within his particular industry. Mr. Martinez went from receiving performance assessment grades of five (5) out of five (5) to receiving performance assessment grades of two (2) out of five (5) following his racial discrimination claim. It should be noted that an assessment grade of five (5) is deemed to be excellent, above-and-beyond work. After over twenty years of receiving these excellent performance assessment grades, Mr. Martinez suddenly began receiving a grade of two (2) on the very first assessment following his racial discrimination complaint. Additionally, when Mr. Martinez applied for an opening for Director of Engineering

at Sweetwater Authority from his position as Engineering Manager (the same position he held prior to his 2008 bid for promotion) in June of 2011, he was again passed over. The position was given to an objectively under-qualified individual who, unlike Mr. Martinez, had no experience in the public sector field, having spent 7 of the last 9 years as a nurse. The retaliation by Sweetwater Authority and its agents against Hector Martinez continues to this day, as each day he returns to a hostile work environment.

25.     The retaliation by Sweetwater Authority and its agents against Hector Martinez, as each day he returns to a hostile work environment. Prior to his racial discrimination claim, Mr. Martinez was in charge of about nine employees. Following his claim, Mr. Martinez was only in charge of two employees. To this day, Mr. Martinez is only in charge of two employees. Further, Mr. Martinez, prior to his 2008 racial discrimination claim, maintained professional membership in the American Public Work Society, the American Society of Civil Engineers, International Right of Way Association and North American Corrosion Engineers, the dues for which Defendant Sweetwater Authority paid.  After Mr. Martinez's claim, Sweetwater Authority terminated its payment of the dues to those professional societies. To this day, Sweetwater Authority continues to retaliate against Mr. Martinez for his participation in the racial discrimination investigation by not paying for his professional membership to the above-mentioned societies and associations, while at the same time, continuing to pay for other employees to be members of those societies and associations. In January 22, 2013, Mr. Martinez requested a company-paid data-plan for an iPhone. Mr. Martinez had previously been experiencing difficulty sending text messages to other employees because of his out-dated phone's incompatible technology. Mr. Martinez was also aware of many employees of Sweetwater Authority, including employees of a lower rank than Mr. Martinez, had company-paid iPhones and data plans. When Mr. Martinez requested an iPhone from Jim Smyth, he was flatly rejected without explanation. Mr. Martinez believes that the rejection of his iPhone request is exemplary of the disparate treatment he receives from Sweetwater Authority as a result of either his race, retaliation for his 2008 racial discrimination claim, or both.

As recently as April 24, 2013, Sweetwater Authority held a meeting to over Mr. Martinez's 2011 solar power presentation to the board of directors. Despite having created the original presentation and having been the expert on solar power at Sweetwater Authority for many years, he was not invited to attend the meeting. Mr. Martinez believes that this is yet another example of retaliation against him for his 2008 racial discrimination claim.

Coincidentally, on same day, April 24, 2013, Mr. Martinez's boss Ron Mosier at the direction of Jim Smyth, worked directly with Mr. Martinez's staff, instead of working with Mr. Martinez or even including Mr. Martinez, regarding the administrative building parking lot entrance modification project. It should be noted that Jim Smyth consistently reiterates the importance of employees going through the chain of command at Sweetwater Authority. This constant reiteration of the importance of chain of command apparently does not apply to Mr. Martinez is troubling. The administrative building parking lot entrance modification project is one of many projects Mr. Martinez is leading and Mr. Martinez believes his exclusion from work on this project, and the inclusion of the employees who work beneath him, is yet another example of the retaliation he is subjected to as a result of his 2008 racial discrimination claim.

26.     It is anticipated that Defendant Sweetwater Authority will assert that the termination of Mark Rogers's leadership at Sweetwater Authority has effectively cured the retaliation suffered by the Plaintiffs. If Defendant is to make such a contention in good faith, they are ignorant and oblivious to the culture of hate, racism and collusion that was inherited and continued by Mark Rogers successor and protégé Jim Smyth. The departure of Mark Rogers was essentially "too little too late" for the Plaintiffs, who are ostracized and excluded by their co-workers due to the efforts of Mark Rogers and others acting in concert with him against Plaintiffs.

27.     Plaintiffs believe that the contents of Lynn Lasry's internal investigative report into Plaintiffs' claim of retaliation will essentially establish their legal claim of retaliation. However, Defendant, by and through its agents, have repeatedly denied Plaintiff access to this report, thereby exhausting all of Plaintiffs' non-legal remedies. In fact, General Manager Jim

Smyth has indicated to Plaintiff George Silva that the only way to access the report the issue was to sue.

28.     As a direct, foreseeable and proximate result of the aforementioned conduct by defendant, plaintiffs have suffered and continue to suffer, losses in earnings from promotions and opportunities which they have been precluded from, earning capacity and other benefits of employment, all in an amount yet to be ascertained.

29.     As a proximate result of defendant's willful, knowing and intentional discrimination and retaliation, plaintiffs have suffered and continue to suffer humiliation and emotional distress in an amount according to proof at trial.

30.     Plaintiffs are informed and believe and thereupon allege that the actions of defendant as hereinabove alleged was willful, wanton, malicious and oppressive, and done with knowledge that its conduct was unlawful.  Notwithstanding such knowledge, defendant despicably subjected plaintiffs to cruel and unjust hardship in conscious disregard of plaintiffs' rights as hereinabove alleged.  Plaintiffs are thus entitled to exemplary damages in an amount to be determined

## SECOND CAUSE OF ACTION
## EMPLOYMENT DISCRIMINATION – FAILURE TO PREVENT DISCRIMINATION AND RETALIATION

31.     Plaintiffs reallege each and every paragraph of the complaint as if fully set forth herein.

32.     Pursuant to Gov. Code §12940, et. seq., an employer has a duty to take reasonable steps to prevent discrimination based on harassment and retaliation based on participation in a protected activity.

33.     Defendant violated its duty under Gov. Code §12940, et. seq. by failing to engage all reasonable measures to prevent the harassment and retaliation perpetuated against plaintiffs, and to prevent the creation of a hostile work environment.

34.     By continuing to employ Mark Rogers, for two years after Mr. Martinez's racial discrimination claim, and during those two years, allowing him to exercise free reign on imposing retaliation on the Plaintiffs, Defendant Sweetwater Authority failed to protect the

Plaintiffs from illegal discrimination and retaliation. By continuing to exclude Plaintiffs and commit acts of retaliation to this day, Sweetwater Authority continues to fail to protect Plaintiffs from illegal discrimination and retaliation. In fact, the aforementioned evidence of collusion and orchestration by a wide swath of Sweetwater employees, managers and directors implicates that Sweetwater Authority not only failed to prevent discrimination and retaliation, but instead, Sweetwater Authority actively promoted and engaged in the illegal activity.

35.     Defendant knew, should have known, or ceased to engage in the pervasive and systematic harassment and retaliation against Plaintiffs.  Defendant was repeatedly advised of the harassment and retaliatory actions being perpetuated against plaintiffs.  Despite said knowledge, defendant failed and refused to take immediate and appropriately sufficient corrective action to prevent the hostile work environment alleged herein.

36.     It is anticipated that Defendant will assert that the early departure of Mark Rogers constitutes sufficient prevention and/or remedial steps to correct Sweetwater's misdeeds. Plaintiffs assert that such an argument is false, as Sweetwater Authority is aware that his successor, Jim Smyth, is ideologically and operationally the same influence of retaliation and discrimination, being that he loyally served as Mark Roger's protégé for years prior to his succession. Additionally, such an argument by Defendant ignores the culture that Mark Rogers cultivated and that is still in place. Mark Rogers may be gone, but Plaintiffs are in no better position than when he was still at Sweetwater Authority.

37.     Plaintiffs' claim of failure to prevent harassment and retaliation is supported by defendant's actions alleged above.

38.     As a result of defendant's failure to take all reasonable steps to prevent harassment and retaliation in violation of FEHA, Plaintiffs have suffered and continue to suffer damages, including severe emotional distress, in an amount to be proven at trial.

39.     As a proximate result of the wrongful acts of defendant, plaintiffs have suffered actual, consequential and incident financial losses, including without limitation, loss of employment-related opportunities for growth, in an amount according to proof at time of trial.

40.     As a proximate result of the wrongful acts of defendant, plaintiffs have suffered and continue to suffer emotional distress, mental anguish, shame, embarrassment, and injury to reputation and are entitled to damages in an amount according to proof at trial.

41.     The actions being taken against plaintiffs and the hostile work environment they are forced to endure in order to work at Sweetwater Authority are carried out by and/or ratified by defendant.  Plaintiffs are entitled to exemplary damages in amount to be proven.

## THIRD CAUSE OF ACTION
## EMPLOYMENT DISCRIMINATION – RACIAL DISCRIMINATION

42.     Plaintiff Hector Martinez realleges each and every paragraph of the complaint as if fully set forth herein.

43.     Pursuant to the California Fair Employment and Housing Act, Government Code Sections 12900, et seq., defendant owed Plaintiff Hector Martinez a duty to take all reasonable action to prevent and correct discrimination and retaliation in the workplace and to provide Plaintiffs and other employees with a work environment free from discrimination and retaliation.

44.     The conduct of defendants, and each of them, as set forth above and below, constitutes unlawful race discrimination and retaliation in violation of the California Fair and Housing Act, Government Code Sections 12900 et seq., which codifies the state's public policy.

45.     Defendant discriminated against Plaintiff Hector Martinez because of his Race. Specifically, defendant fostered a work environment and promoted discriminatory practices against people of color, to wit, minorities. Plaintiff Hector Martinez is a Hispanic-American and a member of a protected class.

46.     Specifically, in 2008, Hector Martinez was denied a promotion that was given to white person (Jack Adam) who, in the chain of command at Sweetwater Authority, was one level below him. In a 2008 comparison of Jack Adam and Plaintiff Hector Martinez, the following criteria was available to Defendant and served as the basis of its selection of which employee to promote to the position of Director of Engineering:

/ / / /

| ITEM | HECTOR MARTINEZ | JACK ADAM |
|---|---|---|
| Position | Engineering Manager | Principal Engineer |
| Race | Hispanic-American | Caucasian |
| Birth Year | 1964 | 1968 |
| Years of Experience in Public Agency | 21 | 3 |
| Years of Experience in Engineering | 24 | 16 |
| Masters Degree | Yes | No |
| Honorable Military Service | Yes | No |
| Department Health Services | Grade 4 | None |
| | | |
| Current Engineering Deparment Operational Knowledge | Superior (See paragraph 23 of Complaint) | Minimal |
| AWWA Certification | Grade 3 | None |
| Number of times as acting Director of Engineering | 80 (5 times per year for 14 years) | 0 |
| Official Sweetwater Authority Letters Signed Per Year | 250 | 10 |
| Number of Official Memos Written per Year | 15 | 2 |
| Number of Work Orders written at Sweetwater Authority per Year | 20 | 2 |
| Number of Diverse Projects Assigned | 15 | 2 |

| Current Rank | One level below Director | Two levels below Director |
|---|---|---|
| Salary | $130,174 per year | $122,570 per year |
| Hours Worked Overtime in Last 20 Years | 3000+ | 0 |

47.   Plaintiff Martinez clearly was performing competently in the position he held. The circumstances leading to Plaintiff Hector Martinez being passed over for promotions were motivated by unlawful race discrimination. A review of the above chart leads to no other plausible conclusion.

48.   Defendant's conduct by engaging in, fostering, promoting, and condoning race discrimination in the work place, as set forth above, constitutes a violation of California and the Federal Government's fundamental public policy against such unlawful discrimination and retaliation.

49.   As a direct and proximate result of defendant's conduct in violation of California's public policy against race discrimination and retaliation, as set forth above, Plaintiff has suffered severe humiliation and embarrassment, anxiety, distress, loss of self-esteem and other highly unpleasant emotions, including loss of self-worth, feelings of helplessness, and hopelessness for his own future. Further, Plaintiff suffered injuries to his reputation, and has been forced to employ legal counsel and to incur attorney's fees, costs of suit and related expenses in an amount not yet fully ascertained. Plaintiff Martinez, to this very day, continues to be discriminated against by Sweetwater Authority and its agents and continues to suffer new and ongoing humiliation, embarrassment, anxiety, distress, loss of self-esteem, helplessness and hopelessness.

50.   In engaging in the conduct set forth above, and in failing to act, as set forth above, Defendant has acted intentionally, negligently, recklessly, outrageously, despicably, maliciously, oppressively, fraudulently, and in bad faith, with the intent of harming Plaintiff Hector Martinez and without regard to his rights under both the Federal and California Constitutions. Accordingly, Plaintiff is entitled to recover exemplary damages.

## FOURTH CAUSE OF ACTION
## EMPLOYMENT DISCRIMINATION – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

51.     Plaintiffs reallege each and every paragraph of the complaint as if fully set forth herein.

52.     Pursuant to Title VII of the Civil Rights of 1964 ("Title VII"), 42 U.S.C. Section 2000e et seq., Defendant, as Plaintiffs' employer, owed Plaintiffs a duty to take reasonable action to provide them with a workplace free from racial discrimination and illegal retaliation. In breach of its duties under Title VII, Defendant discriminated against Plaintiff Hector Martinez because of his race and retaliated against all Plaintiffs for objecting to, complaining about, and eventually participating in the investigation of racial discrimination in the workplace. Plaintiffs were subjected to unwelcome racial jokes, conduct and comments by their supervisors and co-workers, and retaliation from co-workers and supervisors.

53.     The initial discrimination was based on race, as Hector Martinez is Hispanic-American. The discrimination was severe and pervasive and altered the conditions of his employment and created an abusive working environment. The abusive working environment caused by the racial discrimination became so intolerable that Plaintiff complained to Defendant about the discrimination. Defendant knew and should have known about the discrimination and retaliation and failed to take prompt and effective remedial action and effectively authorized, condoned and ratified the discrimination. Further, Defendant perpetuated and continues to perpetuate systematic and orchestrated retaliation against all Plaintiffs for their participation in the investigation of Plaintiff Martinez's 2008 racial discrimination claim.

54.     As a direct and proximate result of the conduct of Defendant in violation of Title VII's policy against discrimination, harassment and retaliation, as set forth above, all Plaintiffs have suffered severe humiliation and embarrassment, anxiety, distress, loss of self-esteem and other highly unpleasant emotions. Further, All Plaintiffs have suffered injuries to their reputation, and have been forced to employ legal counsel and to incur attorney's fees, costs of suit and related expenses in an amount not yet fully ascertained. These injuries continue to this

day, as Mr. Martinez continues to be discriminated against and all Plaintiffs continue to be retaliated against.

55.     In engaging in the conduct set forth above, and in failing to act, as set forth above, Defendant acted intentionally, negligently, recklessly, despicably, maliciously, oppressively, fraudulently, and in bad faith, with the intent of harming Plaintiff Martinez and without regard to his rights. Accordingly, Plaintiff Hector Martinez is entitled to recover exemplary damages.

**WHEREFORE**, Plaintiffs  Hector Martinez, George Silva, Michael Garrod, and Myrna Silva pray judgment against Defendant, Sweetwater Authority, as follows:

1.     For medical and incidental expenses, past and future;

2.     For lost earnings and loss of career opportunities, past and future;

3.     For general compensatory damages, past and future;

4.     For prejudgment interest to the extent permitted by law;

5.     For attorneys' fees and costs incurred pursuant to Government Code Section 12965(b) and to the extent otherwise permitted by law;

6.     For such other and further relief as this Court may deem just and proper.

DATED:                                        LAW OFFICES OF ELLIOTT N. KANTER


                                              _____
                                              Elliott N. Kanter, Esq.
                                              Attorney for Plaintiffs, HECTOR MARTINEZ,
                                              GEORGE SILVA, MICHAEL GARROD, and
                                              MYRNA SILVA

AMENDED COMPLAINT FOR DAMAGES - 18

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR MARTINEZ, GEORGE SILVA, MICHAEL GARROD, and MYRNA SILVA,<br><br>                     Plaintiffs,<br><br>v.<br><br>SWEETWATER AUTHORITY; AND DOES 1 THROUGH 50 INCLUSIVE<br><br>                     Defendants. | CASE NO.: 3:13-cv-00167-CAB-NLS<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, Sam Zakhour, am a citizen of the United States and am at least eighteen years of age. My business address is 2445 Fifth Avenue, Suite 350, San Diego, California 92101.

I am not a party to the above-entitled action. I have caused service of the PLAINTIFF'S FIRST AMENDED COMPLAINT and this CERTIFICATE OF SERVICE on the following parties by electronically filing the foregoing with the Clerk of the U.S. District Court for the Southern District of California using its ECF System, which electronically notifies them:

Golnar Jabbari Fozi, Attorney for Defendant, Sweetwater Authority

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 29, 2013

_____
Sam Zakhour